**Craig AVEDISIAN, Plaintiff,**

**v.**

**Richard D. HOLCOMB, Commissioner, Department of Motor Vehicles, Dave Wheeler, Director of Field Operations, Department of Motor Vehicles, Ken Jameson, Assistant Administrator, Department of Motor Vehicles, Harry D. Brown, Assistant Branch Manager, Department of Motor Vehicles, Defendants.**

**Civ. A. No. 94–600–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 24, 1994.

Craig Avedisian, plaintiff, pro se.

Jeffrey A. Spencer, Asst. Atty. Gen., Richmond, VA, for defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

Plaintiff, Craig Avedisian ("Avedisian"), has filed a Complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution. Avedisian is presently before the Court on his petition for a Temporary Restraining Order, seeking to enjoin the defendants from prohibiting him from soliciting citizens to sign his ballot petition for the United States Senate inside the branch offices of the Department of Motor Vehicles ("DMV"). For reasons set forth below, the motion for a Temporary Restraining Order is DENIED.

## I.

The basic facts are not in dispute. Avedisian is attempting to have his name placed on the ballot in the upcoming senatorial election as an Independent candidate for the United States Senate. To succeed, Avedisian needs to collect the signatures of 14,865 registered voters by 7:00 p.m. on June 14, 1994. In furtherance of his efforts, Avedisian would like to solicit the signatures for his ballot petition from people standing in line inside the DMV branch offices. If allowed to do so, Avedisian said that he would approach the third person in line at the DMV and, if they are registered voters, he would introduce himself, ask them if they would sign his ballot petition, and offer them his campaign literature. Avedisian stated that he would avoid any discussion of substantive issues such as abortion, gun control, health care, etc. If a person is not a registered voter, Avedisian would point out where they could register and offer his assistance if necessary. If someone declines his solicitation, Avedisian said he simply would work backward to the next person in the line.

The DMV refused Avedisian's request to solicit signatures inside the branch offices, but has allowed him to conduct his activities outside of the offices, so long as he does not block ingress or egress to the building. Because the DMV branch offices conduct voter registration, the DMV contends that granting Avedisian's request would be a criminal violation of Virginia Code § 24.2–1003 [1], which prohibits the distribution of political literature and other types of political campaigning at a voter registration site, although it permits such activity outside the voter registration site. Avedisian alleges that it is his constitutional right, under the First and Fourteenth Amendment, to conduct the activities inside the DMV branch offices.

## II.

In *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 811 (4th Cir. 1991), the Fourth Circuit noted that the granting of "interim relief [is] an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." Thus, the standard to be applied to requests for a preliminary injunction is

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.

*Id.* at 812. As opposed to various circuits which first emphasize the Plaintiff's "likelihood of success", the Fourth Circuit prefers to first emphasize the elements of

---

1. Section 24.2–1003 provides as follows:

**§ 24.1–1003. Campaigning at registration locations.**—Any person who gives or tenders any campaign materials to, or solicits or attempts to influence the vote of, any person while he is at any registration, shall be guilty of a Class 3 misdemeanor. Nothing in the section shall prohibit the distribution of campaign materials outside any building in which a registration activity is being conducted.

hardship balancing ... by balancing the harm or injury imposed on the plaintiff in the event relief is denied against the harm to the defendant if the relief is granted, and on the basis of such balancing proceeds to determine the degree by which a 'likelihood of success' on the merits must be established before relief may issue.

*Id.* at 811. Thus, the balancing of harms determines "the degree by which the plaintiff must establish the likelihood of success on his part." *Id.* at 813. Accordingly, the request for a preliminary injunction is evaluated on a sliding scale approach, so that in an extreme case "if that balance is struck in favor of the Plaintiff, it is enough that grave or serious questions are presented; and Plaintiff need not show a likelihood of success." *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 196 (4th Cir.1977).

### III.

Turning to the first factor, the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, Avedisian argues that if he is denied access to solicit signatures inside the DMV offices there is no way he will obtain the necessary number of signatures on his ballot petition, ending his senatorial campaign. However, the plaintiff has access to precisely the same individuals outside the DMV offices as inside. Under the present restriction, Avedisian is free to solicit every DMV customer as they are entering and exiting the building.

In particular, the plaintiff argues that he suffers two harms by being forced to solicit outside the DMV branch offices. The first harm is the discomfort caused by potentially inclement weather. The second harm is that people are much less willing to listen to him as they are rushing in and out of the building. As to the first harm, the Court finds that occasionally having to endure inclement weather does not amount to irreparable harm. Likewise, as to the second harm, the fact that Avedisian would have a more captive audience inside the offices, while admittedly true, does not amount to irreparable harm. By requiring Avedisian to solicit outside everyone is placed in the same position. Avedisian is free to request signatures from

every DMV customer if he so chooses, and every customer is free to stop and listen or continue on their way as they so choose. However, if he were allowed to solicit people while they are standing in line inside the DMV, those people would not be free to walk away unless they were willing to forfeit their place in line. The Court feels that "[w]hile petitioner clearly has a right to express his views to those who wish to listen, he has no right to force his message upon a[ ] [captive] audience incapable of declining to receive it." *Lehman v. City of Shaker Heights,* 418 U.S. 298, 307, 94 S.Ct. 2714, 2719, 41 L.Ed.2d 770 (1974) (J. Douglas, dissenting). Accordingly, the Court finds that the plaintiff will suffer no irreparable harm if the injunction is denied.

As to the second factor, the Court feels that the likelihood of harm to the defendants if the requested relief is granted is much greater. The DMV offices are small and usually crowded with persons who are trying to obtain licenses, pay tax on vehicles, obtain tags, etc. If Avedisian is permitted to carry on his activities inside the building, then presumably, all other political candidates must be given the same opportunity. This most certainly would lead to disruption of services to the public and would unduly devolve the DMV into an entanglement of the political process. Plaintiff argues that the potential chaos could be controlled by limiting access to one person at a time for a limited period. The Court believes that this is an unrealistic solution which would require additional employees to implement and could still be subjected to abuse. Moreover, pursuant to Virginia Code § 24.2–1003, *supra,* note 1, the DMV potentially would be subjecting itself to criminal liability as an aider and abettor in the violation of the state's election laws. Accordingly, the Court finds that the likelihood of harm to the defendants is substantial if the injunction is granted.

The third factor to be examined by the Court is the likelihood that the plaintiff will succeed on the merits. The crux of the plaintiff's Complaint is that the DMV's ban of the plaintiff's soliciting signatures and distributing campaign leaflets inside the DMV branch offices violates the First and Four-

teenth Amendments to the United States Constitution. The defendants contend that the ban is not a violation of Avedisian's constitutional rights and is, in fact, mandated by the election laws of Virginia.

It is indisputable that the type of solicitation at issue in this case is a form of speech protected under the First Amendment. *Intern. Soc. for Krishna Consciousness v. Lee*, — U.S. —, —, 112 S.Ct. 2701, 2703, 120 L.Ed.2d 541 (1992); *United States v. Kokinda*, 497 U.S. 720, 725, 110 S.Ct. 3115, 3118, 111 L.Ed.2d 571 (1990). Thus, the Court must determine the level of scrutiny that applies to the regulation of this protected speech. In assessing the restrictions that the government seeks to place on the use of its property, the Supreme Court has developed a "forum based" approach, with varying degrees of scrutiny for public versus nonpublic fora. *Lee*, — U.S. at —, 112 S.Ct. at 2705, citing *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). See also *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).[2]

The Supreme Court recently outlined the characteristics of a public forum.

[A] traditional public forum is property that has as "a principal purpose ... the free exchange of ideas." Moreover, consistent with the notion that the government—like other property owners—"has power to preserve the property under its control for the use to which it is lawfully dedicated,"

the government does not create a public forum by inaction. Nor is a public forum created "whenever members of the public are permitted freely to visit a place owned or operated by the Government." The decision to create a public forum must instead be made "by intentionally opening a nontraditional forum for public discourse." Finally, we have recognized that the location of property has bearing because separation from acknowledged public areas may serve to indicate that the separated property is subject to greater restriction.

*Lee*, — U.S. at —, 112 S.Ct. at 2706 (citations omitted).

■ Considering the facts of the present case in light of recent case law, the Court finds that the inside of a DMV branch office is a nonpublic forum.[3] See *United States v. Kokinda*, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (sidewalk leading from parking area of post office to front door was nonpublic forum); *Longo v. United States Postal Service*, 983 F.2d 9 (2d Cir.1992) (interior postal walkway is nonpublic forum). While the sidewalks and parking lot in front of the building may or may not be a public forum, the interior office space, which is fully separated from these areas, certainly is not. Accordingly, to pass constitutional muster the challenged prohibition need only be reasonable and viewpoint neutral. *Lee*, — U.S. at — – —, 112 S.Ct. at 2705–06; *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. Further-

---

2. In *Lee*, the Supreme Court explained the forum based approach as follows:

Under this approach, regulation of speech on government property that has traditionally been available for public expression is subject to the highest scrutiny. Such regulations survive only if they are narrowly drawn to achieve a compelling state interest. The second category of public property is the designated public forum, whether of a limited or unlimited character—property that the state has opened for expressive activity by part or all of the public. Regulation of such property is subject to the same limitations as that governing a traditional public forum. Finally, there is all remaining public property. Limitations on expressive activity conducted on this last category of property must survive only a much more limited review. The challenged regulation need only be reasonable, as long as the regulation is not

an effort to suppress the speaker's activity due to disagreement with the speaker's view. *Lee*, — U.S. at — – —, 112 S.Ct. at 2705–06 (citations omitted).

3. The plaintiff, while disputing the proper test, apparently conceded that under recent Supreme Court jurisprudence the inside of a DMV branch office would be a nonpublic forum. When addressing a question by the Court at the hearing regarding how public of a forum was involved here, the plaintiff responded:

Right. There is, even if this is not a public forum, which I believe under the Rehnquist analysis, in that case this would not be a public forum, there is some dispute as to what the test would be for a nonpublic forum.
Hearing Transcript, C.A. No. 94–600–A (May 9, 1994).

more, the prohibition " 'need not be the most reasonable or the only reasonable limitation.' " *Lee*, —— U.S. at ——, 112 S.Ct. at 2708, *quoting Kokinda*, 497 U.S. at 730, 110 S.Ct. at 3121 (citations omitted).

DMV offices are dedicated to much more than the registration of vehicles and licensing ·of drivers. They are dedicated to the exercise of all of the DMV's legal duties and obligations, which include motor vehicle related tax collection, regulation of motor vehicle dealers, motor vehicle related law enforcement, motor vehicle safety, voter registration, donation of anatomical gifts, and a number of other functions. As already indicated, the DMV branch offices are small and often overflowing with anxious and time constrained customers attempting to complete one or more of the various functions that the DMV administers. The restriction at issue provides a reasonable method for the DMV to manage the activities inside the branch offices and avoid any further hinderance or annoyance for their customers. In the instant action, the restriction also prevents the DMV from becoming entangled in political controversies. While Avedisian indicates that he would be polite while talking to potential voters in the DMV lines, other candidates may not be so polite and could become embroiled in political debates involving abortion, gun control, health care, or other issues. It would be unseemly for the branch offices of the DMV to devolve into an arena for political debate where political candidates could solicit citizens and hoist their views upon a captive and often already aggravated audience. The restriction at issue is a reasonable and viewpoint neutral method for the DMV to prevent potential chaos and to maintain control over the operation of their offices.

The defendants further justify their restriction on soliciting by claiming that it is mandated by the state's election laws governing registration sites. Section 24.1–1003 of the Virginia Code, *supra*, note 1, specifically prohibits the distribution of political literature and other types of political campaigning at a voter registration site, although it permits such activity outside the voter registration site. As already indicated, the DMV branch offices are utilized for voter registration. In fact, under the National Voter Registration Act of 1993, Public Law 103–31, 107 STAT 77 (1993), DMV branch offices are required to become voter registration locations. The obvious intention of the state legislature in passing § 24.1–1003 was to separate partisan politics from the registration process. To that end, for all the reasons previously stated, the Court finds the statute to be a reasonable and viewpoint neutral restriction on a nonpublic forum. Accordingly, if the DMV were to allow the activity sought by the plaintiff inside its branch offices, it would be condoning and abetting a criminal violation of the state's election laws.

Plaintiff argues that the restriction on his requested activity is unreasonable in light of the fact that the DMV allowed the Lions Club to solicit patrons inside the DMV branch offices on March 31 and April 1, 1994. The Court does not find this argument persuasive. One of the functions assigned to the DMV by statute is the obligation to include a Uniform Donor Document for the donation of anatomical gifts as part of every Virginia driver's license and to provide a written statement to every driver's license applicant explaining the significance of the Uniform Donor Document and the procedures for making an organ donation. *See* Va.Code § 46.2–342 (1990). The two instances when the Lions Club was present at the DMV branch Offices were officially recognized by the Governor of Virginia as "Eye Donor Days" in the Commonwealth. Although the Lions Club is a private organization, its campaign on these two days was conducted as part of the activities of Old Dominion Eye Bank working in conjunction with the Virginia Transplant Council. These activities were in support of a recognized function of the DMV and occurred in accordance with the state statute governing the procurement of anatomical gifts. *See* Va.Code § 32.1–297.1 (1990). Accordingly, the Court finds that allowing the Lions Club to solicit eye donations on two days specifically recognized by the Governor for such a purpose serves a significant state interest and does not render the DMV's restriction on the plaintiff's requested solicitation unreasonable or unconstitutional.

**190**

Upon consideration of the foregoing, it is difficult for the Court to see how the plaintiff will be able to prevail on the merits of his case. While discovery and other evidence may be offered at a later hearing, the Court believes that plaintiff's likelihood of success on the merits is slight.

The last factor which must be considered by the Court is the public interest. Conducting the ordinary business of motor vehicle licensing and registration, tag renewal, and tax payment at the various DMV branch offices is often a very trying experience for the ordinary citizen who goes there. The Court feels that to further subject them to partisan political campaigning while a captive audience would not be in the public interest. Nor would forcing the DMV to become an arena for partisan politics benefit the public interest. Thus, the Court feels that it would not be in the public interest to grant the injunction.

Accordingly, for the reasons stated above, the plaintiff's motion for a Temporary Restraining Order is DENIED.

An appropriate Order shall issue.